If it pleases the Court, good morning, Your Honors. My name is Michael Donahoe. I work for the Federal Defenders of Montana. I'm here on behalf of Ms. Voorhies. You know, I guess I wouldn't say I've been here a lot. I've been coming since the 80s, late 80s, and I always, as a matter of preparation, try and fashion some kind of opening that will inspire discussion and questioning, that sort of thing. And I searched and searched here. I mean, this is not complicated, in my view, this case. But as I was reviewing some of the decisions that I cited, in particular the King case in the opening brief, I came across this in a footnote. And I don't know that I had seen it prior. Judge Graber wrote the opinion. And she said, quote, only after the meaning and scope of a search clause are determined under state law does the Fourth Amendment analysis begin. I don't think that there's any group of words that better expresses what we're trying to argue in this case. That's why the procedure, in some respects, becomes almost as important as the substance. We're trying to curb the court's focus and look at what went on in the context of the state law analysis, on which we prevailed. Well, but let me ask you about that. Because the government does say that the Montana statute gives you the option of sending them to the penitentiary or to remitting them to the custody of the Department of Corrections, and that within its custodial authority, the Department of Corrections has discretion to place them in a lot of different settings, one of which is out in the community subject to supervision with conditions. If that's correct, then it seems that she was lawfully placed by the department in the community with conditions. Maybe they signed the wrong form, but it fits within the Montana statutory framework. We have a legal condition that's attached to her release that makes this look a lot like the Supreme Court cases on parole and probation. Mm-hmm. Yeah, and I appreciate that, Judge Collins, but respectfully, I think it's just wrong. I think Judge Christensen reached exactly the opposite conclusion, that there might be some settings in which a person could be placed, but Ms. Voorhees was not placed in any of those kinds of settings. She was simply released from custody. So it's your position that under Montana law and the Montana statute that the Department of Corrections lacks the authority to place people in the community in a probation parole-type setting subject to conditions. That's not one of the options they have. That's not one of the options that they have. That's a deal-breaker for me. I mean, I know it's unpublished, but don't some of the Montana cases that are cited in the brief seem to be contrary? They seem to assume that there is an ability to release on conditions. Well, you know, I think that some of that language in... I mean, I don't know exactly what Your Honor is referring to. I will concede that there may be some unpublished matters out there, but some of that language... In the Tolliver case. Yeah. Some of that language is pretty loose. Judge Christensen got into that. If I could take a minute here and explain that. When we had the hearing, when the hearing closed down, the suppression hearing, that is, and he calls for argument, which is routine, and he questioned me specifically about the possibility that this could be conceived as a parole-type situation. And I didn't back down on that and said, Your Honor, respectfully, I just don't think that's correct. And went and checked the record and found a document and supplied it to him before he wrote out his written decision where it expressly said in the calculation of her time served, if you will, Ms. Voorhees was not on parole. And the court accepted that. So the argument is not that she was on parole, but that she was on conditional release. Correct. And the government points to an administrative regulation saying conditional release is the placement by the Department of an offender into the community under the jurisdiction of the department and subject to the department's rules, clearly contemplating that there can be some such program, as well as pointing us to other statutes that say that the Department of Corrections, that someone can be, an offender can be referred to the Department of Corrections with recommendations, which seems to be what the sentencing court did here. What's your response to those particular, that statute and regulations? My response, Your Honor, is that all of those matters were dealt with in Judge Christensen's written decision. Right, but now we're here on appeal and we may or may not agree with Judge Christensen. So I'm asking for your response to the government's arguments. All right. Well, I guess that gets into some of the procedure. I'm here on an appeal, a Rule 11 conditional appeal, where we've reserved our right to appeal the adverse claim. In my view, the adverse claim is the Fourth Amendment analysis that we should have never gotten to in the first place. Judge Christensen clearly disposes of the conditional release analysis and says, quite frankly, that there is no statutory authority for that program. She was not in such program, even if there were. And he even articulates that it could be ultra-virus that the Department of Corrections is doing this. So what if we disagree with that ruling? If the court disagrees with the ruling and we determine that Ms. Voorhees was, in fact, appropriately under the supervision committed to the Department of Corrections, and the Department of Corrections has rules as are allowed by the statute and regulations, and the rules have a condition of search. I think it's number 11, search based on reasonable suspicion. So what if we agree with the government on that? I think that if that's going to be the posture, that ruling by this court would exceed the scope of what's being appealed here. All we have before us is a suppression, whether the district court erred in not suppressing the evidence. So we can affirm that on any ground supported by the record. It's not supported by the record. OK, well, I understand that's your argument. And I'm asking you, what is the argument, rather than just reliance on the district court's ruling? Your Honor, I don't think I could make that any more clear. We should have not reached the Fourth Amendment analysis. I think the quote that I began with serves me well here. The court is required to take a deep dive into the state statutory law that allowed, authorized this probationary search. That was done by the district court. It was negative to the government. The government, nevertheless, agreed to a conditional appeal that tapers the issue down to whether or not the Fourth Amendment analysis should have been reached. There is no- I don't understand. Are you saying that the district court should have granted your motion based on state law? Yes, absolutely. That's what I'm saying. Yes, that is the law of the circuit, as I understand it. That's what Judge Graber is talking about in King in footnote three, in the penultimate sentence of the footnote. You don't even begin the Fourth Amendment analysis until the state law, probationary law, is defined and expressed. And that's the Wren case. This court did that exactly. I think in the 90s in the Wren case that we cite because state law was not followed. There had to be judicial authorization for that probation search in Wren. That didn't happen. That didn't happen here. The appellant in this case was put on conditions by an executive actor that had no authority to do that. And on top of that, she had statutory rights to have the district court, state court, set down the conditions in a hearing with counsel. All of those accessories around this lady's rights were never observed. And they're consistently defied by DOC in the state of Montana. You're down to a few seconds. You want to save them for rebuttal? Thank you. Thank you. May it please the court. Tim Tatarka of the District of Montana on behalf of the United States. The sole issue in this case is whether the search of Ms. Voorhees' residence was reasonable under the Fourth Amendment. And in particular, under the Supreme Court's balancing test in Sampson versus California, recognizing the reduced expectation of privacy for an individual serving a criminal sentence and the increased state interest in supervising those folks when they are released back into the community on conditions. Would you respond to opposing counsel's position that this is really determined by state law and you don't, in essence, even reach the Fourth Amendment? Well, the only question here is, is the Fourth Amendment one? The district court engaged in the analysis of the state of the condition as part of the relevance of the district court's analysis of the state court condition is to put it in context of that Sampson versus California balancing test. So there is no separate issue of state law. The question here about whether or not the evidence should be suppressed is a question about whether or not it is unreasonable, that the search was unreasonable in the Fourth Amendment and therefore the court should suppress it. Is there any case where the mere fact that the offender was a parole or probationer without any conditions, because that's the situation the district court thought was pertinent here, would have a reduced expectation of privacy under the Fourth Amendment under Sampson in those cases? No, Your Honor. There are two things that are important in the Sampson analysis. There's the status, the substantially reduced expectation of privacy of the offender merely because of status. And then there is the further reduction because the offender was put on notice unambiguously aware of the fact that she was subject to the condition. So if we find that the offender was not subject to conditions, which is where the district court came out, then you would lose. Is that correct? No. So if we were in a fact scenario where there was no condition had ever been imposed, that would be a different circumstance. The question about whether or not the district court thought this case was. Yes, Your Honor. And we think that's incorrect. Let me explain. This is a lot like the situation in Virginia versus Moore. So in Virginia versus Moore, what the court looked at there is that the reasonableness of an arrest and search incident to arrest is whether or not there was probable cause that the individual had committed a criminal offense, even though under state law, the state didn't have, the officer didn't have authority to arrest for that particular provision. Here, there is no question that Ms. Voorhees was subject to a reasonable suspicion search condition. That's in excerpts of the record, page 233. The separate question about whether or not the state was authorized to impose such a condition is a separate question and solely a matter of state law. So she signed the document that's entitled Conditions of Probation and Parole. But if I understand your position, she wasn't on probation or parole. That is correct. She was subject to conditions of supervised release. Did they use the wrong form, or do they have a form for conditional release and they just messed up the paperwork? They do, Your Honor. It isn't in the record. We could submit it as a supplemental excerpts of record. There is a different form, and I want to be absolutely clear. I have a form that is slightly updated, so I would have to get the one for that time. But there is a form for conditional release that includes that same reasonable suspicion search condition. She signed the form for probation and parole. But that doesn't change the fact that under the administrative rules of Montana, 20.7.1102, that condition is a requirement of release onto conditions. And where we made a mistake below, which then the district court echoed. But doesn't that 11.02 also refer to probation and parole? It says. I mean, it seems like you're relying solely on a definition of conditional release, which is a little bit odd. No, Your Honor. That says, it says probation, parole, or other community supervision. And if you look at that State versus Tulliver case, the state Supreme Court makes clear that conditional release constitutes that other community supervision. And the reference to the probation and parole officer is required to provide is, are the people in the Department of Corrections, are they referred to as probation and parole officers? Yes. The probation and parole officers, under state law, they work under the executive branch. All of these are under the same program, or the same purview, same folks, in terms of all of the community release stuff. And again, where we erred in terms of pointing to the correct statutory authorization, the correct statutory authorization is that Montana Code annotated 53-1, 202, and 203. And that's what we cite in our briefs. Rather than, we had followed an earlier district court case that had referred to the Community Corrections Act programs, which deals with local government programs. Should we treat all these arguments as forfeited, since you've messed everything up in the district court? No, Your Honor. Because this is de novo review, and because there is just one question here, which is, is this reasonable under the Fourth Amendment? There's no issue of waiver, because this court isn't bound by a mistake of law by one of the parties, or by the district court judge, for that matter. The fact of the matter is, this is authorized under Montana law, statutorily authorized, as recognized by the Montana Supreme Court. And that issue isn't determinative of any issue with respect to the Fourth Amendment, because the Fourth Amendment turns on the Sampson balancing test. And again, this court engaging in de novo review can easily see that Ms. Voorhees was actively serving a criminal sentence. That's clear from excerpts of the record 200 to 202, which is that judgment, as well as the supplemental excerpts of the record 4, which is what Mr. Donahoe referenced in terms of saying that she was not released on parole. So she was actively serving a sentence. She was unambiguously aware that she was subject to a search condition. That's in excerpts of the record 233. That is the analysis that the court needs to say that applying the Sampson balancing test, there's no question that she had a reduced expectation of privacy. The government had an overwhelming interest, and the search was reasonable. The question about whether or not that was authorized under Montana law, again, we presented the court with the correct law on appeal, correct state law. But in addition to that, that issue isn't determinative under Virginia versus Moore. That's a question of state law, that a violation, even if there were a violation of state law, that wouldn't. But applying Moore to Sampson seems a little bit different. Because Sampson seems to put some weight on the fact that state law creates a reduced expectation of privacy because you're lawfully subjected to a special search condition. So I disagree with that, Your Honor, because I think if we were pre-Sampson and Knights, if you were looking at Griffin and the special needs analysis, then you would be dealing with a special needs analysis that does take into account sort of the structure of state law. The Griffin and Knights analysis is Fourth Amendment balancing test, where that condition, and it makes perfect sense, what we're looking at is the reasonable expectation of privacy. Was her privacy reduced by the fact that she was put on notice that she could be searched based on this condition? And that question is certainly the case. The fact that she may have been able to challenge that condition under state law doesn't change that fact. Thank you very much. We'll give you a minute for rebuttal. Thank you. I appreciate that, Your Honor. Sorry, I didn't watch the time there. You know, all I want to say in response is that the back end of this argument by the government is heavily laden with some kind of consent theory now. And that would have been easily developed in the district court if that was the position. That's the problem with this case. The government's answers are a moving target. And in the end, what they did was take a ruling that wasn't acceptable to them, agreed to be able to come to this court on a dispositive motion. I've argued the merits of that and said that we shouldn't reach the Fourth Amendment analysis based on what the district court decided positively for Ms. Voorhees. And that should be the end of the matter. I'm not trying to save the world here. All I want is that she wasn't on any conditions and the evidence should have been suppressed. Thank you. We thank both sides for their arguments. The case of United States versus Voorhees is submitted.
judges: IKUTA, COLLINS, Fitzwater